**THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:17-cv-00345-MR**

| | | |
|---|---|---|
| **GERI D. WILLIS and CARMEN L. WILLIS,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) | **O R D E R** |
| **WILLIAM W. TRITLE, CHRIS JON DOBSON, RICHARD J. MAITA, and BANK OF AMERICA,** | ) ) ) ) | |
| **Defendants.** | ) ) ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Motions to Dismiss filed by

Defendants Richard J. Maita, Chris John Dobson, and Bank of America

[Docs. 7, 20, 22].

## I.    PROCEDURAL BACKGROUND

The Plaintiffs Geri D. Willis and Carmen L. Willis, proceeding *pro se*,

commenced this action on December 19, 2017, by filing a Complaint against

the Defendants William W. Tritle ("Tritle"), Chris Jon Dobson ("Dobson"),

Richard J. Maita (misidentified in the Complaint and Amended Complaint as

"Richard Matlina" and hereinafter referred to as "Maita"), and Bank of

America ("BANA").[1]  [Doc. 1].  Before any of the Defendants made an appearance or filed an answer, the Plaintiffs filed an Amended Complaint on February 8, 2018.  [Doc. 5].

Defendants Dobson, Maita, and BANA all now move to dismiss the Plaintiffs' Amended Complaint for failing to state a claim upon which relief can be granted.[2]  [Docs. 7, 20, 22].  The Plaintiffs have responded to each of these motions.  [Docs. 19, 25, 26].

## II.  STANDARD OF REVIEW

The central issue for resolving a Rule 12(b)(6) motion is whether the claims state a plausible claim for relief.  See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In considering Defendants' motions, the Court accepts the allegations in the Amended Complaint as true and construes them in the light most favorable to the Plaintiffs.  Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 190-92.  When considering a motion to dismiss, the Court is obligated to construe a *pro se* complaint liberally, "however inartfully

---

[1] While the Plaintiffs name "Bank of America" as a defendant in this action, no such legal entity exists.  Bank of America, N.A. ("BANA") has appeared in the case on the assumption that this is a misnomer and that the Plaintiffs intended to name BANA as a defendant.  [See Doc. 20 at 1 n.1].

[2] Defendant Title has filed an Answer to the Plaintiffs' Amended Complaint [Doc. 18] and has not joined in the motions to dismiss filed by his co-defendants.

pleaded[.]" <u>Booker v. S.C. Dep't of Corr.</u>, 855 F.3d 533, 540 (4th Cir. 2017),

<u>cert. denied</u>, 138 S. Ct. 755 (2018) (quoting <u>Erickson v. Pardus</u>, 551 U.S.

89, 94 (2007)), <u>cert. denied</u>, 138 S. Ct. 755 (2018).

Although the Court must accept any well-pleaded facts as true and

construe such facts liberally, it is not required to accept "legal conclusions,

elements of a cause of action, and bare assertions devoid of further factual

enhancement...." <u>Consumeraffairs.com</u>, 591 F.3d at 255; <u>see also</u>

<u>Giacomelli</u>, 588 F.3d at 189.

The claims need not contain "detailed factual allegations," but must

contain sufficient factual allegations to suggest the required elements of a

cause of action. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007);

<u>see also</u> <u>Consumeraffairs.com</u>, 591 F.3d at 256. "[A] formulaic recitation of

the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555.

Nor will mere labels and legal conclusions suffice. <u>Id.</u> Rule 8 of the Federal

Rules of Civil Procedure "demands more than an unadorned, the defendant-

unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678

(2009).

The complaint is required to contain "enough facts to state a claim to

relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570, 127 S. Ct. at

1974; <u>see also</u> <u>Consumeraffairs.com</u>, 591 F.3d at 255. "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; see also Consumeraffairs.com, 591 F.3d at 255. The mere possibility that a defendant acted unlawfully is not sufficient for a claim to survive a motion to dismiss. Consumeraffairs.com, 591 F.3d at 256; Giacomelli, 588 F.3d at 193. Ultimately, the well-pled factual allegations must move a plaintiff's claim from possible to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

## III.  FACTUAL BACKGROUND

While the Plaintiffs' allegations are inartfully pled and difficult to discern, the following is a recitation of the relevant facts based upon the public record and the well-pled factual allegations asserted by the Plaintiffs.

On December 22, 2006, the Plaintiffs obtained a loan in the amount of $352,750.00 (the "Loan") to purchase real property commonly known as 3690 Penland Road, Spruce Pine, North Carolina 28777 (the "Property"). The Loan was obtained through Professional Lending Services, a business owned and operated by Defendant Dobson. [Doc. 5 at 9 ¶¶ 5, 6, 9]. The Plaintiffs were represented by Defendant Maita in this transaction. [Id. at ¶¶ 6, 10].

To secure the Loan, the Plaintiffs executed a promissory note (the "Note") and deed of trust (the "Deed of Trust")[3] in favor of Community Resource Bank, N.A. ("Lender"). [Doc. 20-2]. The Deed of Trust secures the Loan by placing a lien on the Property and also names Mortgage Electronic Registration Systems, Inc. ("MERS") as its beneficiary as nominee for the Lender and the Lender's successors and assigns. [Id.]. On February 27, 2013, MERS, acting as nominee for the Lender, assigned its interest in the Deed of Trust to Federal National Mortgage Association ("Fannie Mae"). [See Doc. 20-3].[4]

The Plaintiffs allege that at the closing in December 2006, the Loan that was presented to them contained terms that they had not agreed to. When the Plaintiffs refused to sign the documents, Defendant Dobson assured them that Defendant Tritle "would redo [the Loan] over right in the

_____

[3] BANA attached a copy of the pertinent Deed of Trust to its Motion to Dismiss. The Deed of Trust was recorded on March 19, 2013, Book 451, Page(s) 430-44, with the Mitchell County, North Carolina Register of Deeds. Because it is a public record, this Court may consider the Deed of Trust without converting the present Motions into ones for summary judgment. See, e.g., Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) ("In reviewing a Rule 12(b)(6) dismissal, we may properly take judicial notice of matters of public record.").

[4] BANA also attached the Assignment from MERS to Fannie Mae, which was recorded on March 19, 2013 in the Register of Deeds for Mitchell County at Book 533, Page(s) 534-36, as an exhibit to its Motion to Dismiss. The Court may also consider this public record without converting the present motions to one for summary judgment. See Philips, 572 F.3d at 180.

next 3 months to Countrywide."[5]  [Doc. 5: Am. Complaint at 4 ¶ III].  The Plaintiffs then signed the documents.  [Id.].  However, the promised "redo" was never done, thereby causing the Plaintiffs "mental and physical damages" -- including high blood pressure, a stroke, the loss of employment, and "great humiliation."  [Id. at ¶¶ III, IV].

The Plaintiffs allege that the "Loan Seller" posed as a conventional mortgage lender, thereby leading the Plaintiffs "to reasonably believe that the Loan Seller, the mortgage broker, and the loan originator had an interest in the success" of the transaction, i.e., the repayment of the loan.  [Id. at 10 ¶ 14]. The Plaintiffs allege that the "Loan Seller" used an inflated appraisal, thereby adding "an undisclosed cost to the loan."  [Id. at 10 ¶ 17].  Later in the Complaint, the Plaintiffs allege that the "Defendants" failed to provide a HUD-1 Settlement Statement and other disclosures at the closing.  [Id. at 12 ¶ 35].

The Plaintiffs state that they have "every reason to believe" that "the party receiving the payments (Countrywide) is neither the holder in due

---

[5] BANA admits that is a successor by merger to the "Countrywide" referenced in the Amended Complaint.  In 2007, Countrywide Bank, National Association converted to a federal savings bank under the title of Countrywide Bank, FSB.  In 2009, Countrywide Bank, FSB converted to a national banking association under the name of Countrywide Bank, National Association, and immediately thereafter merged with and into BANA. [Doc. 20-1 at 3 n.5].

course of the note nor the owner of any rights under the mortgage provisions of the deed of trust," and that their "payments are not being forwarded to the holder in due course of the note nor to any other authorized party."  [Id. at 10 ¶¶ 19, 20].

The Plaintiffs allege that their "alleged loan closing" was in fact a "part of an undisclosed hidden illegal scheme to issue unregulated securities (mortgage backed securities) based upon the negotiation of non-negotiable notes, the terms of which have been changed, altered, amended or modified AFTER the execution by the Plaintiff[s]."  [Id. at 11 ¶ 25].  As part of this scheme, the Plaintiffs allege that the "Defendants" failed to advise the Plaintiffs: (1) that the loan "was not in [the Plaintiffs'] best interest"; (2) that the terms of the loan "were less favorable than the fixed-rate loan which Defendants previously advised Plaintiff[s] that they qualified for"; (3) that the loan was "an inter-temporal transaction (transaction where terms, risks, or provisions at the commencement of the transaction differ at a later time) on which Plaintiff[s were] providing cover for Defendants' illegal activities"; (4) that the Plaintiffs "would likely be placed in a position of default, foreclosure, and deficiency judgment regardless of whether [they] met [their] loan obligations once the true lender or true holder(s) in due course appeared; and (5) that the originating lender "had no intention of retaining ownership

interest in the mortgage loan or fully servicing same…." [Id. at 11-12 ¶¶ 28-33]. The Plaintiffs allege that they would not have entered into the loan transaction had "the true nature of this scheme [been] revealed…." [Id. at 11 ¶ 26].

In July 2016, the Plaintiff Geri D. Willis reviewed the mortgage documents and discovered a supposed "fraudulent transfer of real property." [Id. at 8 ¶ 3]. Specifically, the Plaintiffs contend that: "There was no valid assignment of mortgage, between Community Resource Bank who had our [mortgage] documents. [sic] On December 22, 2006, where on the same day we were told that we were really with Countrywide." [Id. (emphasis in original)]. The Plaintiffs further contend that BANA committed "fraud" and a "breach of contract" by producing "fraudulent, 'ta-da' endorsements of promissory notes." [Id. at 8 ¶ 4].

Based on these allegations, the Plaintiff assert causes of action for: (1) violations of the Home Ownership Equity Protection Act, 15 U.S.C. § 1639, et seq. ("HOEPA"); (2) violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, et seq. ("RESPA"); (3) violations of the Truth-in- Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"); (4) fraudulent misrepresentation; (5) breach of fiduciary duty; (6) unjust enrichment; (7) civil conspiracy; and (8) a civil violation under the Racketeer Influenced and

Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"). [Doc. 5 at 13-19]. The Plaintiffs seek compensatory damages [Id. at 19]; a rescission of the Loan transaction [Id. at 14 ¶ 58(a)]; and a declaration that the Plaintiffs alone are "the rightful holder[s] of title to the property and that Defendant[s] . . . be declared to have no estate, right, title or interest in said property." [Id. at 18-19 ¶ 108].

## IV.  DISCUSSION

### A.  Plaintiffs' Claims for Violations of HOEPA and TILA (Counts I and III)

In their first and third causes of action, the Plaintiffs allege that the Defendants failed to provide the Plaintiffs the required TILA and HOEPA disclosures before the consummation of the Loan transaction in 2006. [Doc. 5: Am. Complaint at 13 ¶¶ 42-47; 14 ¶¶ 50-55; 15 ¶¶ 69-72].

"TILA governs the terms and conditions of consumer credit by, *inter alia*, requiring lenders to disclose certain details about loans and loan fees and costs." Stephens v. Bank of Am. Home Loans, Inc., No. 5:16-CV-660-F, 2017 WL 384315, at *3 (E.D.N.C. Jan. 25, 2017) (citing 15 U.S.C. § 1601 et seq.). HOEPA, which amended TILA, "requires lenders to make additional disclosures to borrowers of 'high-cost' or 'high-rate' loans." Cunningham v. Nationscredit Fin. Servs. Corp., 497 F.3d 714, 717 (7th Cir.

2007).   "The purpose for enacting TILA and HOEPA was to provide economic stabilization in consumer credit lending by assuring meaningful disclosure of credit terms and thus permitting consumers to make an informed use of credit."  Cetto v. LaSalle Bank Nat'l Ass'n, 518 F.3d 263, 265, n.1 (4th Cir. 2008) (citing 15 U.S.C. § 1601(a)).

TILA, as amended by HOEPA, imposes liability only on "creditors" and their "assignees."  Stephens, 2017 WL 384315, at *3.  TILA defines a "creditor" as "a person who both (1) regularly extends . . . consumer credit . . . and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement."  15 U.S.C. § 1602(g).  "Because a mortgage broker is not one to whom the initial debt is payable," the term "creditor" does not include a mortgage broker or its agents.  Cetto, 518 F.3d at 270.

The Plaintiffs have not made any factual allegations to plausibly claim that Defendants Dobson and Maita regularly extended consumer credit or were the persons to whom the Plaintiffs' mortgage loan debt was payable. Thus, neither Dobson nor Maita can reasonably be deemed a "creditor" within the meaning of TILA.   Accordingly, the Plaintiffs cannot maintain any claim against Dobson or Maita under TILA, as amended by HOEPA.

While BANA, as successor by merger to Countrywide Bank, does not contest its role as "creditor" within the meaning of TILA, it nevertheless contends that any such claims asserted against it necessarily fail because they are barred by the applicable statute of limitations.

"Ordinarily, a defense based on the statute of limitations must be raised by the defendant through an affirmative defense, and the burden of establishing the affirmative defense rests on the defendant." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (internal citation omitted). Therefore, the Court generally cannot reach the merits of an affirmative defense in ruling on a motion to dismiss under Rule 12(b)(6). Id. Only in those extraordinary circumstances where all facts necessary to the affirmative defense "clearly appear[ ] on the face of the complaint," may the Court address an affirmative defense at the motion to dismiss stage. Richmond, Fredericksburg & Potomac R.R. Co. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993).

Here, BANA argues that the Plaintiffs' right to rescission under TILA was completely extinguished by the Plaintiffs' failure to give notice of their decision to exercise their right to rescission within three years after consummation of the transaction, and thus, their claims under TILA and HOEPA are time-barred. [Doc. 20-1 at 11-12]. The Plaintiffs' Amended

Complaint, however, is silent on the issue of notice.  Thus, the Court cannot say that all facts necessary to the resolution of this affirmative defense "clearly appear" on the face of the Amended Complaint.

Moreover, in addition to seeking rescission, the Plaintiffs also seek compensatory damages under TILA.  [See Doc. 5 at 14 ¶ 63].  Such claims are subject to a one-year statute of limitations.  See 15 U.S.C. § 1640(e).  That limitations period, however, may be "subject to equitable tolling where a defendant has fraudulently concealed the facts underlying a TILA violation."  Roach v. Option One Mortg. Corp., 598 F. Supp. 2d 741, 751 (E.D. Va. 2009); Barnes v. West, Inc., 243 F. Supp. 2d 559, 563 (E.D. Va. 2003).  Viewing the Amended Complaint in the light most favorable to the Plaintiffs, and construing the factual allegations asserted therein liberally, the Court cannot say that the Plaintiffs cannot avail themselves of equitable tolling on the face of the Amended Complaint. The tolling of the applicable statute of limitations is an issue which may be subject to resolution at the summary judgment stage but, if necessary, at trial. Accordingly, BANA's motion to dismiss the Plaintiffs' claims under TILA and HOEPA on the basis of the applicable statute of limitations is denied.

**B.    Plaintiffs' Claims under RESPA (Count II)**

In Count II of their Amended Complaint, the Plaintiffs allege that the Defendants "accepted charges for the rendering of real estate services which were in fact charges for other than services actually performed" in violation of 12 U.S.C. § 2607.  [Doc. 5: Am. Complaint at 15 ¶ 66].

Section 2607(b) of RESPA prohibits "any person from giving or accepting any unearned fees, i.e., charges or payments for real estate settlement services other than for goods or facilities provided or services performed." Freeman v. Quicken Loans, Inc., 566 U.S. 624, 629 (2012).  "In order to establish a violation of § 2607(b), a plaintiff must demonstrate that a charge for settlement services was divided between two or more persons." Id. at 638.  Thus, § 2607(b) does not impose liability for "overcharges," "unreasonably high fees," or "a single provider's retention of an unearned fee." Id. at 630-31.

The Plaintiffs' Amended Complaint is completely devoid of any factual allegations that any of the Defendants improperly split a fee with any other persons.  In fact, the Plaintiffs do not even allege which settlement charges were allegedly improper.  The Plaintiffs' generic allegations regarding their settlement charges are simply insufficient to effectively state a RESPA

claim.  For these reasons, the Plaintiffs' claims for RESPA against Defendants BANA, Dobson, and Maita are dismissed.

### C.    Plaintiffs' Fraudulent Misrepresentation Claim (Count IV)

In order to state a valid claim for fraud under North Carolina law, a party must allege a false representation or concealment of a material fact that: (1) was reasonably calculated to deceive; (2) was made with the intent to deceive; (3) did in fact deceive the party; and (4) resulted in damages to the party.  Anderson v. Sara Lee Corp., 508 F.3d 181, 189 (4th Cir. 2007).  Under North Carolina law, a three-year statute of limitations applies to fraud claims.  N.C. Gen. Stat. 1-52(9).  The limitations period begins to run at the time of discovery of the facts constituting the fraud or at the plaintiff should have discovered the fraud in the exercise of reasonable diligence.  Mountain Land Props., Inc. v. Lovell, 46 F. Supp. 3d 609, 624 (W.D.N.C. 2014).

Where a party's allegations sound in fraud, the allegations also must satisfy the heightened pleading standards of Rule 9 of the Federal Rules of Civil Procedure.  Cozzarelli v. Inspire Pharm. Inc., 549 F.3d 618, 629 (4th Cir. 2008).  Rule 9(b) provides that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  Rule 9 applies not only to claims

asserting common law fraud, but to all claims where the allegations have the substance of fraud. <u>Cozzarelli</u>, 549 F.3d at 629. A claim is subject to dismissal under Rule 12(b)(6) for failure to state a claim if it does not comply with Rule 9(b). <u>Harrison v. Westinghouse Savannah River Co.</u>, 176 F.3d 776, 783 n.5 (4th Cir. 1999).

"The standard set forth by Rule 9(b) aims to provide defendants with fair notice of claims against them and the factual ground upon which they are based, forestall frivolous suits, prevent fraud actions in which all the facts are learned only following discovery, and protect defendants' goodwill and reputation." <u>McCauley v. Home Loan Inv. Bank, F.S.B.</u>, 710 F.3d 551, 559 (4th Cir. 2013) (citations omitted). Accordingly, the Court should be hesitant to dismiss a complaint under Rule 9(b) if the Court is "satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." <u>Id.</u> (quoting <u>Harrison</u>, 176 F.3d at 784).

Here, the Plaintiffs generally allege that the Defendants "fraudulently caused Plaintiff[s] to execute predatory loan documents" or "knowingly and intentionally concealed material information from Plaintiff[s]." [<u>See</u> Doc. 5: Am. Complaint at 11 ¶ 27; 16 ¶ 74]. The Plaintiffs, however, fail to allege

what specific false representations the Defendants purportedly communicated to them, when and where such misrepresentations were made, how they relied upon those statements, or how they were damaged. Conclusory allegations that the loan documents were "predatory" or that the Defendants failed to disclose unspecified "material information" are simply not sufficient to state a claim for fraud.

To the extent that the Plaintiffs contend that the Defendants fraudulently concealed facts, the Plaintiffs never specify what facts were allegedly concealed, nor do they provide a basis for any legal duty of disclosure. See Dallaire v. Bank of Am., N.A., 367 N.C. 363, 368, 760 S.E.2d 263, 267 (2014) ("the law does not typically impose upon lenders a duty to put borrowers' interests ahead of their own. Rather, borrowers and lenders are generally bound only by the terms of their contract and the Uniform Commercial Code.").

The only specific misrepresentation cited by the Plaintiffs in their Amended Complaint is a statement made by Defendant Dobson at the closing that Defendant Tritle would redo their mortgage so that it was "right," with Countrywide, within three months of closing, but that the Defendants "never had that done." [Doc. 5: Am. Complaint at 4 ¶ III]. The Plaintiffs, however, make no allegation that that Dobson made this statement with the

requisite intent to deceive. Even if Dobson's statement constituted actionable fraud,[6] however, the Plaintiffs necessarily discovered the falsity of this statement in 2007, when the mortgage loan had not been "redone" within three months of the closing. Thus, by their own admission, the statute of limitations bars any possible fraud claim by the Plaintiffs with respect to this representation.

For all these reasons, Plaintiffs' fraud claim must be dismissed with prejudice.

### D.  Plaintiffs' Claim for Breach of Fiduciary Duty (Count V)

Under North Carolina law, it is well-established that "[a] fiduciary duty arises when there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." Branch Banking & Trust Co. v. Thompson, 107 N.C. App. 53, 60-61, 418 S.E.2d 694, 699 (citation and internal quotation marks omitted), disc. rev. denied, 332 N.C. 482, 421 S.E.2d 350 (1992). "However, an ordinary debtor-creditor relationship generally does not give rise to such a special confidence: the mere

---

[6] Dobson's statement, being promissory in nature, does not constitute a representation of a subsisting fact. Thus, to support a fraud claim, such statement must have been made with the then-present intent not to perform. See Gribble v. Gribble, 25 N.C. App. 366, 369, 213 S.E.2d 376, 378 (1975). The Plaintiffs make no such allegation here.

existence of a debtor-creditor relationship between the parties does not create a fiduciary relationship." Id. at 61, 418 S.E.2d at 699 (citation and internal quotation marks omitted). Nevertheless, the North Carolina Court of Appeals has noted that "[t]his is not to say . . . that a bank-customer relationship will never give rise to a fiduciary relationship given the proper circumstances." Id. "Rather, parties to a contract do not thereby become each others' fiduciaries; they generally owe no specific duty to one another beyond the terms of the contract and the duties set forth in the U.C.C." Id.

Here, the Plaintiffs have failed to allege sufficient facts to establish a fiduciary relationship with any of the Defendants. While the Plaintiffs allege that the Defendants were "fiduciaries" and that the Plaintiffs "reposed trust and confidence" in them [Doc. 5: Am. Complaint at 16 ¶ 81], such allegations are merely conclusory and fail to provide any specific plausible facts to support their claim. See Synovus Bank v. Coleman, 887 F. Supp. 2d 659, 672 (W.D.N.C. 2012). Accordingly, the Plaintiffs' claim for breach of fiduciary duty must fail.

### E. Plaintiffs' Claim for Unjust Enrichment (Count VI)

The North Carolina Supreme Court has defined the claim of unjust enrichment as follows:

> In order to establish a claim for unjust enrichment, a party must have conferred a benefit on the other party. The benefit must not have been conferred officiously, that is it must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances. The benefit must not be gratuitous and it must be measurable.

Booe v. Shadrick, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988). However, it is well-settled under North Carolina law that a claim for unjust enrichment will not lie where a valid contract exists. Hinson v. United Fin. Servs., Inc., 123 N.C. App. 469, 473, 473 S.E.2d 382, 385 (1996) ("Unjust enrichment is based upon the equitable principle that a person should not be permitted to enrich himself unjustly at the expense of another. Where, as here, there is a contract which forms the basis for a claim, the contract governs the claim and the law will not imply a contract.") (citation and internal quotation marks omitted); see also Whitfield v. Gilchrist, 348 N.C. 39, 42, 497 S.E.2d 412, 415 (1998) ("Only in the absence of an express agreement of the parties will courts impose a quasi-contract or a contract implied in law in order to prevent an unjust enrichment."); Booe, 322 N.C. at 570, 369 S.E.2d at 556 ("If there is a contract between the parties the contract governs the claim and the law will not imply a contract.").

Here, the Plaintiffs explicitly acknowledge that they entered into contracts with each of Defendants Dobson, Maita, and BANA. [See Doc. 5: Am. Compl. at 8 ¶ 4; 9 ¶¶ 6, 9]. Because North Carolina law cannot impose an implied contract where an express contract already exists between the parties, the Plaintiffs cannot state a claim for unjust enrichment against these Defendants.

In any event, the Plaintiffs have failed to allege the essential elements of an unjust enrichment claim. Specifically, the Plaintiffs have failed to allege that Dobson, Maita or BANA received any improper benefits or amounts from the Plaintiffs. Rather, they specifically allege that "Defendants" received payment "from third parties including but not limited to investors, insurers, other borrowers, the United States Department of the Treasury, the United States Federal Reserve and Bank of America, N.A." [Doc. 5: Am. Complaint at 17 ¶ 89]. Such an allegation is insufficient to support a claim for unjust enrichment.

For all these reasons, the Plaintiffs' claim for unjust enrichment against Defendants Dobson, Maita, and BANA is dismissed.

### F.    Plaintiffs' Claim for Civil Conspiracy (Count VII)

To state a claim for civil conspiracy under North Carolina law, a plaintiff must allege the following essential elements: "(1) an agreement

between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." Piraino Bros., LLC v. Atl. Fin. Group, Inc., 211 N.C. App. 343, 350, 712 S.E.2d 328, 333 (2011), disc. rev. denied, 365 N.C. 357, 718 S.E.2d 391 (2011) (quoting Privette v. Univ. of N.C., 96 N.C. App. 124, 139, 385 S.E.2d 185, 193 (1989)). However, "there is not a separate civil action for conspiracy in North Carolina." Dove v. Harvey, 168 N.C. App. 687, 690, 608 S.E.2d 798, 800 (2005), disc. rev. denied, 360 N.C. 289, 628 S.E.2d 249 (2006). Rather, the Plaintiffs must be able to state a claim for an underlying tort in order to state a claim for conspiracy. Id. Here, the Plaintiffs have failed to state a claim for any underlying tort to support their conspiracy claim.

Moreover, the Plaintiffs fail to support their civil conspiracy claim with any specific factual allegations. In support of this claim, the Plaintiffs allege, in pertinent part, as follows:

> In connection with the application for and consummation of the mortgage loan [that is] the subject of this action, Defendants agreed, between and among themselves, to engage in actions and a course of conduct designed to further an illegal act or accomplish a legal act by unlawful means, and to commit one or more overt acts in furtherance of the conspiracy to defraud the Plaintiff[s].

21

>Defendants agreed between and among themselves to engage in the conspiracy to defraud for the common purpose of accruing economic gains for themselves at the expense of and detriment to the Plaintiff[s].

[Doc. 5: Am. Complaint at 17 ¶¶ 92-93].  The Plaintiffs' allegations lack any specificity regarding the nature of any agreement between the Defendants, the nature of the purported common scheme or how they were injured by such scheme.  For these reasons, the Plaintiffs' claim for civil conspiracy must be dismissed.

### G.    Plaintiffs' Claim for Civil RICO (Count VIII)

 RICO "provides a private right of action for treble damages to '[a]ny person injured in his business or property by reason of a violation' of the Act's criminal prohibitions."  Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 641 (2008) (quoting 18 U.S.C. § 1964(c)).  A plaintiff seeking civil damages under RICO must show: "(1) conduct [causing injury to business or property]; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity."  Whitney, Bradley & Brown, Inc. v. Kammermann, 436 F. App'x 257, 258 (4th Cir. 2011) (citing Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)).  A pattern of racketeering activity "requires at least two acts of racketeering activity."  18 U.S.C. § 1961(5).  The RICO statutes defines "racketeering activity" as any act or threat of murder, kidnapping, gambling,

arson, robbery, bribery, extortion, dealing in obscene matter, dealing in a controlled substance, or any act which is indictable under a series of enumerated federal criminal statutes. See 18 U.S.C. § 1961(1). To state a civil RICO claim, a plaintiff must allege "the necessary 'continuity' to establish the required pattern that distinguishes 'racketeering activity' under RICO from 'garden-variety' commercial disputes." Gilchrist v. Cook, No. 7:07-0508-HFF-WMC, 2007 WL 950386, at *3 (D.S.C. Mar. 26, 2007) (citation omitted). In order to satisfy the "enterprise" element, a plaintiff must allege "two separate and distinct entities: a 'person' and 'an enterprise' through which the person acts." Id. (citation omitted).

Construing the *pro se* Plaintiffs' Amended Complaint liberally, the Court concludes that the Plaintiff has failed to allege the requisite "enterprise" and "pattern of racketeering activity" necessary to state a RICO claim. While the Plaintiffs identify various alleged tortious activities purportedly committed by the Defendants, the Amended Complaint fails to establish that an "enterprise" existed separate and apart from these individuals. Further, the facts as alleged by the Plaintiffs fail to present any plausible facts to establish the requisite pattern of racketeering activity necessary to sustain a RICO claim. For all these reasons, the Plaintiffs' civil RICO claim is also dismissed.

# O R D E R

**IT IS, THEREORE, ORDERED** that the Motions to Dismiss filed by Defendants Richard J. Maita and Chris John Dobson [Docs. 7, 22] are **GRANTED**, and the claims asserted against these Defendants in the Plaintiffs' Amended Complaint are hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Motion to Dismiss filed by Defendant Bank of America (BANA) [Doc. 20] is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Motion is **DENIED** with respect to the claims asserted against BANA in Counts I and III of the Amended Complaint. In all other respects, the Motion is **GRANTED**, and the claims against BANA in the remaining counts of the Amended Complaint are hereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Signed: February 26, 2019

Martin Reidinger
United States District Judge

24