IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:17-cv-00345-MR

| | | |
|---|---|---|
| GERI D. WILLIS and CARMEN WILLIS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | **MEMORANDUM OF DECISION AND ORDER** |
| WLLIAM W. TRITLE; CHRIS JON DOBSON; RICHARD J. MAITA; and BANK OF AMERICA, | ) ) ) ) | |
| Defendants. | ) ) ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Defendant William W. Tritle's Motion for Judgment on the Pleadings.  [Doc. 37].

## I.    PROCEDURAL BACKGROUND

The Plaintiffs Geri D. Willis and Carmen L. Willis (collectively "Plaintiffs"), proceeding *pro se*, commenced this action on December 19, 2017, by filing a Complaint against the Defendants William W. Tritle ("Tritle"), Chris Jon Dobson ("Dobson"), Richard J. Maita (misidentified in the Complaint and Amended Complaint as "Richard Matlina" and hereinafter referred to as "Maita"), and Bank of America ("BANA") (collectively

"Defendants").[1]  [Doc. 1].  On February 8, 2018, Plaintiffs filed an Amended Complaint before any of the Defendants made an appearance or filed an answer.  [Doc. 5].

The Plaintiffs' Amended Complaint alleges (1) violations of the Home Ownership Equity Protection Act, 15 U.S.C. § 1639, et seq. ("HOEPA"); (2) violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, et seq. ("RESPA"); (3) violations of the Truth-in-Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"); (4) fraudulent misrepresentation; (5) breach of fiduciary duty; (6) unjust enrichment; (7) civil conspiracy; and (8) a civil violation under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO").  [Doc. 5 at ¶¶ 39-102].  Defendants Dobson, Maita, and BANA each moved to dismiss the Plaintiffs' Amended Complaint for failure to state a claim upon which relief can be granted.  [Docs. 7, 20, 22].  The Plaintiffs responded to each of those motions.  [Docs. 19, 25, 26].

On February 26, 2019, this Court granted Defendant Dobson and Defendant Maita's Motions to Dismiss.  [Doc. 34].  This Court denied Defendant BANA's Motion to Dismiss regarding Counts I and III, which

---

[1] The Plaintiffs name "Bank of America" as a defendant in this action, but no such legal entity exists.  Bank of America, N.A. ("BANA") has appeared in the case on the assumption that this is a misnomer and that the Plaintiffs intended to name BANA as a defendant.  [See Doc. 20 at 1 n.1].  This Court referred to BANA as the proper Defendant in the past, [Doc. 34], and will continue to do so here.

alleged HOEPA and TILA violations, but dismissed the Plaintiffs' other claims against BANA.  Id.

Unlike the other Defendants, Defendant Tritle, proceeding *pro se*, filed an Answer to Plaintiffs' Complaint on April 5, 2018.  [Doc. 18].  On April 24, 2018, counsel for Defendant Tritle filed a Notice of Appearance.  [Doc. 23]. Through counsel, Defendant Tritle filed a Motion to Amend his Answer to the First Amended Complaint on May 18, 2018.  [Docs. 28, 29].  On February 22, 2019, this Court issued an Order granting Defendant Tritle's Motion. [Doc. 32].  On the same day, Defendant Tritle filed the Amended Answer to the Amended Complaint.  [Doc. 33].  On March 14, 2019, Defendant Tritle filed this Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c) and 12(h)(2) for failure to state a claim upon which relief can be granted.

## II.    STANDARD OF REVIEW

Under Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Motions under Rule 12(c) can include failure to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(h)(2).  "Rule 12(c) motions are governed by the same standard as motions brought under Rule

12(b)(6)."  Massey v. Ojaniit, 759 F.3d 343, 347 (4th Cir. 2014) (citing Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir.1999)).

Therefore, to survive a motion for judgment on the pleadings for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678.

The Court is obligated to construe a *pro se* complaint liberally, "however inartfully pleaded[.]"  Booker v. S.C. Dep't of Corr., 855 F.3d 533, 540 (4th Cir. 2017) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)).  In considering the Defendant's Motion for Judgment on the Pleadings, the Court accepts the allegations in the Amended Complaint as true and construes them in the light most favorable to the Plaintiffs.  Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).  Although the Court must accept any well-pleaded facts as true and construe such facts liberally, it is not required to accept "legal conclusions, elements of a cause of action, and

bare assertions devoid of further factual enhancement . . . ." Consumeraffairs.com, 591 F.3d at 255; see also Giacomelli, 588 F.3d at 189.

Determining whether a complaint states a plausible claim for relief is "a context-specific task," Giacomelli, 588 F.3d at 193, which requires the Court to assess whether the factual allegations of the complaint are sufficient "to raise the right to relief above the speculative level," Twombly, 550 U.S. at 555. As the Fourth Circuit has explained:

> To satisfy this standard, a plaintiff need not forecast evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements. Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is probable, the complaint must advance the plaintiff's claim across the line from conceivable to plausible.

Walters, 684 F.3d at 439 (citations and internal quotation marks omitted).

## III.  FACTUAL BACKGROUND

The allegations contained in the Plaintiffs' Amended Complaint are inartfully pled and difficult to discern. The following summarizes the relevant facts based on the public record and the well-pled factual allegations asserted by the Plaintiffs, which are taken as true.[2]  The Court also

---

[2] In reciting the relevant factual allegations, the Court has disregarded all "bare legal conclusions" asserted in the Complaint, see Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011), as well as "[t]he mere recital of elements of a cause of action," see Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012).

considered the factual allegations contained in Defendant Tritle's Amended Answer to the Complaint, see Rinaldi v. CCX, Inc., No. 3:05–CV–108, 2008 WL 2622971, at *2 n. 3 (W.D.N.C. July 2, 2008), "where and to the extent they have not been denied or do not conflict with the complaint," Jadoff v. Gleason, 140 F.R.D. 330, 331 (M.D.N.C. 1991).

On December 22, 2006, the Plaintiffs obtained a loan in the amount of $352,750.00 (the "Loan") to purchase real property commonly known as 3690 Penland Road, Spruce Pine, North Carolina 28777 (the "Property"). The Loan was obtained through Professional Lending Services. [Doc. 5 at ¶¶ 5, 6, 9]. Defendant Tritle was the President of Professional Lending Services. [Id. at 2].

To secure the Loan, the Plaintiffs executed a promissory note (the "Note") and deed of trust (the "Deed of Trust")[3] in favor of Community Resource Bank, N.A. ("Lender"). [Doc. 20-2]. The Deed of Trust secured the Loan by placing a lien on the Property and named Mortgage Electronic Registration Systems, Inc. ("MERS") as its beneficiary as nominee for the Lender and the Lender's successors and assigns. [Id.]. On February 27,

---

[3] The Deed of Trust was recorded on March 19, 2013, Book 451, Page(s) 430-44, with the Mitchell County, North Carolina Register of Deeds. This Court may consider the Deed of Trust without converting the present Motions into ones for summary judgment because it is a public record. See, e.g., Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) ("In reviewing a Rule 12(b)(6) dismissal, [the court] may properly take judicial notice of matters of public record.").

2013, MERS, acting as nominee for the Lender, assigned its interest in the Deed of Trust to Federal National Mortgage Association ("Fannie Mae"). [Doc. 20-3].[4]

The Plaintiffs allege that they had not agreed to terms contained in the Loan presented to them at closing on December 2006. When the Plaintiffs refused to sign the documents, Defendant Dobson assured them that Defendant Tritle "would redo [the Loan] over right in the next 3 months to Countrywide."[5] [Doc. 5 at ¶ III]. The Plaintiffs then signed the documents. [Id.]. However, the promised "redo" was never done, which caused the Plaintiffs "mental and physical damages," including high blood pressure, a stroke, the loss of employment, and "great humiliation." [Id. at ¶¶ III, IV].

The Plaintiffs allege that the "Loan Seller" posed as a conventional mortgage lender, leading the Plaintiffs "to reasonably believe that the Loan Seller, the mortgage broker, and the loan originator had an interest in the

---

[4] The Assignment from MERS to Fannie Mae was recorded on March 19, 2013 in the Register of Deeds for Mitchell County at Book 533, Page(s) 534-36. As a public record, this Court may also consider the Assignment from MERS to Fannie Mae without converting the present motions to one for summary judgment. See Philips, 572 F.3d at 180.

[5] BANA admits that it is a successor by merger to the "Countrywide" referenced in the Amended Complaint. In 2007, Countrywide Bank, National Association converted to a federal savings bank under the title of Countrywide Bank, FSB. In 2009, Countrywide Bank, FSB converted to a national banking association under the name of Countrywide Bank, National Association, and immediately thereafter merged with and into BANA. [Doc. 20-1 at 3 n.5].

success" of the transaction, i.e., the repayment of the loan.  [Id. at ¶ 14].  The Plaintiffs further allege that the "Loan Seller" used an inflated appraisal, which added "an undisclosed cost to the loan."  [Id. at ¶ 17].  At the closing, the Plaintiffs allege that the Defendants failed to provide a HUD-1 Settlement Statement and other disclosures required by TILA.  [Id. at ¶ 35].

The Plaintiffs state they have "every reason to believe" that "the party receiving the payments (Countrywide) is neither the holder in due course of the note nor the owner of any rights under the mortgage provisions of the deed of trust," and their "payments are not being forwarded to the holder in due course of the note nor to any other authorized party."  [Id. at ¶¶ 19, 20].

The Plaintiffs claim that their "alleged loan closing" was, in fact, a "part of an undisclosed hidden illegal scheme to issue unregulated securities (mortgage-backed securities) based upon the negotiation of non-negotiable notes, the terms of which have been changed, altered, amended or modified AFTER the execution by the Plaintiff[s]."  [Id. at ¶ 25].  As part of this scheme, the Plaintiffs allege that the Defendants failed to advise the Plaintiffs that: (1) the loan "was not in [the Plaintiffs'] best interest"; (2) the terms of the loan "were less favorable than the fixed-rate loan which Defendants previously advised Plaintiff[s] that they qualified for"; (3) the loan was "an inter-temporal transaction (transaction where terms, risks, or provisions at the

commencement of the transaction differ at a later time) on which Plaintiffs [were] providing cover for Defendants' illegal activities"; (4) the Plaintiffs "would likely be placed in a position of default, foreclosure, and deficiency judgment regardless of whether [they] met [their] loan obligations once the true lender or true holder(s) in due course appeared"; and (5) the originating lender "had no intention of retaining ownership interest in the mortgage loan or fully servicing same . . . ." [Id. at ¶¶ 28- 33]. The Plaintiffs allege they would not have entered into the loan transaction had "the true nature of this scheme [been] revealed . . . ." [Id. at ¶ 26].

In July 2016, Plaintiff Geri D. Willis reviewed the mortgage documents and discovered what the Plaintiffs now claim was a "fraudulent transfer of real property." [Id. at ¶ 3]. Specifically, the Plaintiffs contend that: "[t]here was no valid assignment of mortgage, between Community Resource Bank who had our [mortgage] documents. [sic] On December 22, 2006, where on the same day we were told that we were really with Countrywide." [Id. (emphasis in original)].

Based on these allegations, the Plaintiffs assert causes of action for: (1) violations of HOEPA; (2) violations of RESPA; (3) violations of TILA; (4) fraudulent misrepresentation; (5) breach of fiduciary duty; (6) unjust enrichment; (7) civil conspiracy; and (8) a civil violation under RICO. [Doc.

5 at ¶¶ 39-102].  The Plaintiffs seek compensatory damages [Id. at ¶ 109(b)]; rescission of the Loan transaction [Id. at ¶ 58(a)]; and a declaration stating that the Plaintiffs alone are "the rightful holder[s] of title to the property and that Defendant[s] . . . have no estate, right, title or interest in said property." [Id. at ¶¶ 104, 108].

Defendant Tritle moves for judgment on the pleadings for failure to state a claim upon which relief can be granted. [Doc. 37].[6]

## IV.    DISCUSSION

### A.    Plaintiffs' Claims for Violations of HOEPA and TILA (Counts I and III)

In Counts I and III, the Plaintiffs allege that Defendant Tritle failed to provide the required HOEPA and TILA disclosures to the Plaintiffs before the consummation of the Loan transaction in 2006. [Doc. 5 at ¶¶ 42-47, 50-55, 69-72].

"TILA governs the terms and conditions of consumer credit by, inter alia, requiring lenders to disclose certain details about loans and loan fees and costs."  Stephens v. Bank of Am. Home Loans, Inc., No. 5:16-CV-660-F, 2017 WL 384315, at *3 (E.D.N.C. Jan. 25, 2017) (citing 15 U.S.C. § 1601

---

[6] The Plaintiffs filed letters on April 1, 2019 within the time period for a response to Defendant Tritle's Motion for Judgment on the Pleadings.  This Court construes those letters as responding to Defendant Tritle's Motion for Judgment on the Pleadings.  The letters do not raise new arguments beyond what already was contained in the previous filings.  [See Doc 41].

et seq.).  HOEPA, which amended TILA, "requires lenders to make additional disclosures to borrowers of 'high-cost' or 'high-rate' loans." Cunningham v. Nationscredit Fin. Servs. Corp., 497 F.3d 714, 717 (7th Cir. 2007).  "The purpose for enacting TILA and HOEPA was to provide economic stabilization in consumer credit lending by assuring meaningful disclosure of credit terms and thus permitting consumers to make an informed use of credit."  Cetto v. LaSalle Bank Nat'l Ass'n, 518 F.3d 263, 265, n.1 (4th Cir. 2008) (citing 15 U.S.C. § 1601(a)).

TILA, as amended by HOEPA, only imposes liability on "creditors" and their "assignees."   Stephens, 2017 WL 384315, at *3.   TILA defines a "creditor" as "a person who both (1) regularly extends . . . consumer credit . . . and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement."  15 U.S.C. § 1602(g).  "Because a mortgage broker is not one to whom the initial debt is payable," the term "creditor" does not include a mortgage broker or its agents. Cetto, 518 F.3d at 270.

The Plaintiffs do not make any factual allegations to plausibly claim that Defendant Tritle regularly extended consumer credit or was the person to whom the Plaintiffs' mortgage loan debt was payable.   Rather, the

Plaintiffs allege that Defendant Tritle merely worked for the mortgage broker that was involved in the transaction. Thus, Defendant Tritle cannot reasonably be deemed a "creditor" within the meaning of TILA. Since TILA, as amended by HOEPA, only imposes liability on "creditors" and their "assignees, the Plaintiffs cannot maintain any claim against Defendant Tritle under TILA, as amended by HOEPA. For these reasons, the Plaintiffs' claims against Defendant Tritle for HOEPA and TILA violations are dismissed.

### B.     Plaintiffs' Claims for Violations of RESPA (Count II)

In Count II, the Plaintiffs allege that Defendant Tritle "accepted charges for the rendering of real estate services which were in fact charges for other than services actually performed" in violation of 12 U.S.C. § 2607. [Doc. 5 at ¶ 66].

Section 2607(b) of RESPA prohibits "any person from giving or accepting any unearned fees, i.e., charges or payments for real estate settlement services other than for goods or facilities provided or services performed." Freeman v. Quicken Loans, Inc., 566 U.S. 624, 629 (2012). "In order to establish a violation of § 2607(b), a plaintiff must demonstrate that a charge for settlement services was divided between two or more persons." Id. at 638. Thus, § 2607(b) does not impose liability for "overcharges,"

"unreasonably high fees," or "a single provider's retention of an unearned fee." Id. at 630-31.

The Plaintiffs' Amended Complaint fails to identify which settlement charges were allegedly improper. In addition, the Amended Complaint lacks any factual allegations that Defendant Title improperly split a fee with any other persons. The Plaintiffs' generic allegations regarding the settlement charges are insufficient to effectively state a RESPA claim. For these reasons, the Plaintiffs' claim against Defendant Title for RESPA violations is dismissed.

## C.    Plaintiffs' Fraudulent Misrepresentation Claim (Count IV)

To state a valid claim for fraud under North Carolina law, a party must allege a false representation or concealment of a material fact that: (1) was reasonably calculated to deceive; (2) was made with the intent to deceive; (3) did in fact deceive the party; and (4) resulted in damages to the party. Anderson v. Sara Lee Corp., 508 F.3d 181, 189 (4th Cir. 2007). Under North Carolina law, there is a three-year statute of limitations for fraud claims. N.C. Gen. Stat. § 1-52(9). The limitations period begins to run when the plaintiff discovered the facts constituting the fraud or should have done so with reasonable diligence. Mountain Land Props., Inc. v. Lovell, 46 F. Supp. 3d 609, 624 (W.D.N.C. 2014).

Where a party alleges fraud, the allegations also must satisfy the heightened pleading standards of Rule 9 of the Federal Rules of Civil Procedure. Cozzarelli v. Inspire Pharm. Inc., 549 F.3d 618, 629 (4th Cir. 2008). A claim is subject to dismissal for failure to state a claim if it does not comply with Rule 9(b). Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 n.5 (4th Cir. 1999). Rule 9(b) provides that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9 applies to all claims where the allegations have the substance of fraud, not just common law fraud claims. Cozzarelli, 549 F.3d at 629.

"The standard set forth by Rule 9(b) aims to provide defendants with fair notice of claims against them and the factual ground upon which they are based, forestall frivolous suits, prevent fraud actions in which all the facts are learned only following discovery, and protect defendants' goodwill and reputation." McCauley v. Home Loan Inv. Bank, F.S.B., 710 F.3d 551, 559 (4th Cir. 2013) (citations omitted). Accordingly, the Court should be hesitant to dismiss a complaint under Rule 9(b) if the Court is "satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial

prediscovery evidence of those facts." Id. (quoting Harrison, 176 F.3d at 784).

Here, the Plaintiffs generally allege that Defendant Tritle "fraudulently caused Plaintiff[s] to execute predatory loan documents" or "knowingly and intentionally concealed material information from Plaintiff[s]." [Doc. 5 at ¶ 27, 74]. The only specific misrepresentation alleged in the Plaintiffs' Amended Complaint is that Defendant Dobson said that Defendant Tritle would redo Plaintiffs' mortgage with Countrywide so that it was "right" within three months of closing, but the Defendants "never had that done." [Doc. 5 at ¶ III].

As an initial matter, this Court has already ruled that any fraud claim resulting from Defendant Dobson's statement is barred by the three-year statute of limitations.[7] [Doc. 34]. The Plaintiffs necessarily discovered the falsity of this statement in 2007, when the mortgage loan was not "redone" within three months of the closing. [Doc. 5 at ¶ III]. The Plaintiffs' claim was filed on December 19, 2017—well outside the three-year statute of limitations for fraud claims.

---

[7] Defendant Dobson's statement, being promissory in nature, does not constitute a representation of a subsisting fact. Thus, the statement must have been made with the then-present intent not to perform to support a fraud claim. See Gribble v. Gribble, 25 N.C. App. 366, 369, 213 S.E.2d 376, 378 (1975). The Plaintiffs make no such allegation here.

Beyond Defendant Dobson's statement, the Plaintiffs make no other allegations that Defendant Tritle or any other Defendant made any statement that constituted fraud. To the extent that the Plaintiffs contend that Defendant Tritle fraudulently concealed facts, the Plaintiffs never provide a basis for any legal duty of disclosure. See Dallaire v. Bank of Am., N.A., 367 N.C. 363, 368, 760 S.E.2d 263, 267 (2014) ("the law does not typically impose upon lenders a duty to put borrowers' interests ahead of their own. Rather, borrowers and lenders are generally bound only by the terms of their contract and the Uniform Commercial Code.").

Other than the time-barred claim by Defendant Dobson, the Plaintiffs fail to allege what specific false representations Defendant Tritle purportedly communicated to them, when and where such misrepresentations were made, how they relied upon those statements, or how they were damaged. Conclusory allegations that the loan documents were "predatory" or that Defendant Tritle failed to disclose unspecified "material information" are insufficient to state a claim for fraud under Rule 9. Therefore, Plaintiffs fail to state a claim for fraud under Rule 9 of the Federal Rules of Civil Procedure.

For these reasons, Plaintiffs' fraud claim is dismissed.

### D. Plaintiffs' Claim for Breach of Fiduciary Duty (Count V)

Under North Carolina law, "[a] fiduciary duty arises when there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." Branch Banking & Trust Co. v. Thompson, 107 N.C. App. 53, 60-61, 418 S.E.2d 694, 699 (citation and internal quotation marks omitted), disc. rev. denied, 332 N.C. 482, 421 S.E.2d 350 (1992). "However, an ordinary debtor-creditor relationship generally does not give rise to such a special confidence: the mere existence of a debtor-creditor relationship between the parties does not create a fiduciary relationship." Id. at 61, 418 S.E.2d at 699 (citation and internal quotation marks omitted). Nevertheless, "[t]his is not to say . . . that a bank-customer relationship will never give rise to a fiduciary relationship given the proper circumstances." Id. "Rather, parties to a contract do not thereby become each others' fiduciaries; they generally owe no specific duty to one another beyond the terms of the contract and the duties set forth in the U.C.C." Id.

Here, the Plaintiffs fail to allege sufficient facts to establish a fiduciary relationship with Defendant Tritle. While the Plaintiffs allege that the Defendant Tritle and the other Defendants were "fiduciaries" upon whom Plaintiffs "reposed trust and confidence," [Doc. 5 at ¶ 81], such allegations

are merely conclusory and fail to provide any specific plausible facts to support their claim.  See Synovus Bank v. Coleman, 887 F. Supp. 2d 659, 672 (W.D.N.C. 2012).  Accordingly, the Plaintiffs' claim for breach of fiduciary duty must be dismissed.

### E.    Plaintiffs' Claim for Unjust Enrichment (Count VI)

The North Carolina Supreme Court has defined the claim of unjust enrichment as follows:

> In order to establish a claim for unjust enrichment, a party must have conferred a benefit on the other party. The benefit must not have been conferred officiously, that is it must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances. The benefit must not be gratuitous and it must be measurable.

Booe v. Shadrick, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988).

It is well-settled under North Carolina law that a claim for unjust enrichment cannot succeed when a valid contract exists.  Hinson v. United Fin. Servs., Inc., 123 N.C. App. 469, 473, 473 S.E.2d 382, 385 (1996) ("Unjust enrichment is based upon the equitable principle that a person should not be permitted to enrich himself unjustly at the expense of another. Where, as here, there is a contract which forms the basis for a claim, the contract governs the claim and the law will not imply a contract.") (citation and internal quotation marks omitted); see also Whitfield v. Gilchrist, 348

N.C. 39, 42, 497 S.E.2d 412, 415 (1998) ("Only in the absence of an express agreement of the parties will courts impose a quasi-contract or a contract implied in law in order to prevent an unjust enrichment."); Booe, 322 N.C. at 570, 369 S.E.2d at 556 ("If there is a contract between the parties the contract governs the claim and the law will not imply a contract.").

Here, the Plaintiffs explicitly acknowledge that they entered into a contract. [See Doc. 5. at ¶¶ 6, 9]. Since an express contract already exists, the Court cannot imply one here. As such, the Plaintiffs cannot state a claim for unjust enrichment against Defendant Tritle.

For these reasons, the Plaintiffs' claim for unjust enrichment against Defendant Tritle is dismissed.

###    F.    Plaintiffs' Claim for Civil Conspiracy (Count VII)

To state a claim for civil conspiracy under North Carolina law, a plaintiff must allege the following essential elements: "(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." Piraino Bros., LLC v. Atl. Fin. Group, Inc., 211 N.C. App. 343, 350, 712 S.E.2d 328, 333 (2011), disc. rev. denied, 365 N.C. 357, 718 S.E.2d 391 (2011) (quoting Privette v. Univ. of N.C., 96 N.C. App. 124, 139, 385 S.E.2d 185, 193 (1989)). However,

"there is not a separate civil action for conspiracy in North Carolina." <u>Dove v. Harvey</u>, 168 N.C. App. 687, 690, 608 S.E.2d 798, 800 (2005), <u>disc. rev. denied</u>, 360 N.C. 289, 628 S.E.2d 249 (2006).  Rather, the Plaintiffs must be able to state a claim for an underlying tort to state a claim for conspiracy.  <u>Id.</u>

Here, the Plaintiffs fail to state a claim upon which relief can be granted for any underlying tort to support their conspiracy claim.  Moreover, the Plaintiffs fail to support their civil conspiracy claim with any specific factual allegations.  In support of this claim, the Plaintiffs allege, in pertinent part, as follows:

> In connection with the application for and consummation of the mortgage loan [that is] the subject of this action, Defendants agreed, between and among themselves, to engage in actions and a course of conduct designed to further an illegal act or accomplish a legal act by unlawful means, and to commit one or more overt acts in furtherance of the conspiracy to defraud the Plaintiff[s].  Defendants agreed between and among themselves to engage in the conspiracy to defraud for the common purpose of accruing economic gains for themselves at the expense of and detriment to the Plaintiff[s].

[Doc. 5 at ¶¶ 92-93].  The Plaintiffs' allegations lack any specificity regarding the nature of any agreement between the Defendant Tritle and another, the nature of the purported common scheme or how they were injured by such scheme.  For these reasons, the Plaintiffs' claim for civil conspiracy must be dismissed.

### G. Plaintiffs' Claim for Civil RICO (Count VIII)

RICO "provides a private right of action for treble damages to '[a]ny person injured in his business or property by reason of a violation' of the Act's criminal prohibitions." <u>Bridge v. Phoenix Bond & Indem. Co.</u>, 553 U.S. 639, 641 (2008) (quoting 18 U.S.C. § 1964(c)). A plaintiff seeking civil damages under RICO must show: "(1) conduct [causing injury to business or property]; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity." <u>Whitney, Bradley & Brown, Inc. v. Kammermann</u>, 436 F. App'x 257, 258 (4th Cir. 2011) (citing <u>Sedima, S.P.R.L. v. Imrex Co.</u>, 473 U.S. 479, 496 (1985)). A pattern of racketeering activity "requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). The RICO statutes define "racketeering activity" as any act or threat of murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, dealing in a controlled substance, or any act which is indictable under a series of enumerated federal criminal statutes. <u>See</u> 18 U.S.C. § 1961(1). To state a civil RICO claim, a plaintiff must allege "the necessary 'continuity' to establish the required pattern that distinguishes 'racketeering activity' under RICO from 'garden-variety' commercial disputes." <u>Gilchrist v. Cook</u>, No. 7:07-0508-HFF-WMC, 2007 WL 950386, at *3 (D.S.C. Mar. 26, 2007) (citation omitted). To satisfy the "enterprise" element, a plaintiff must allege "two

separate and distinct entities: a 'person' and 'an enterprise' through which the person acts." Id. (citation omitted).

Construing the *pro se* Plaintiffs' Amended Complaint liberally, the Court concludes that the Plaintiffs fail to allege the requisite "enterprise" and "pattern of racketeering activity" necessary to state a RICO claim. While the Plaintiffs assert various activities that are allegedly tortious in nature and purportedly committed by the Defendants, the Amended Complaint fails to establish that an "enterprise" existed separate and apart from these individuals. Further, Plaintiffs' allegations fail to present plausible facts to establish the pattern of racketeering activity necessary to sustain a RICO claim. For these reasons, the Plaintiffs' civil RICO claim against Defendant Tritle is also dismissed.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Motion for Judgment on the Pleadings filed by Defendant William W. Tritle [Doc. 37] is **GRANTED**, and the claims asserted against Defendant Tritle in Plaintiffs' Amended Complaint [Doc. 5] are hereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Signed: July 12, 2019

Martin Reidinger
United States District Judge